USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/2/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAY STREET ADVISORS, LLC,

          Plaintiff,

-against-

KEVIN P. MAHONEY,

          Defendant.

24-CV-9139 (RA) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is defendant and counterclaimant Kevin P. Mahoney's letter-motion, filed on August 19, 2025 (Def. Mot.) (Dkt. 84), seeking an order compelling plaintiff Bay Street Advisors LLC (BSA) to produce all attorney-client communications concerning what Mahoney characterizes as an "extortionate threat" made by BSA's counsel to Mahoney's counsel during settlement negotiations conducted via conference call on January 22 and 23, 2025. For the reasons that follow, the motion will be denied.

**Background**

BSA is an executive search firm. In its Complaint (Compl.) (Dkt. 1), filed on November 27, 2024, BSA claims that Mahoney – its former employee – breached his employment agreement, violated his fiduciary duties, and misappropriated BSA's trade secrets, in violation of the Defend Trade Secrets Act (DTSA), by "exfiltrating the contents of his BSA-issued laptop" onto an external hard drive before leaving BSA for a direct competitor, Christoph Zeiss Partners (CZP); soliciting other BSA employees to join him at CZP; and soliciting at least one BSA client to engage CZP while contractually prohibited from doing so. *See* Compl. (Dkt. 1) ¶¶ 67-90. In his responding pleading, filed on January 24, 2025 (Ans. & CC) (Dkt. 19), Mahoney denies BSA's allegations, sets out numerous affirmative defenses, and asserts two counterclaims: for breach of contract and quantum meruit. *See* Ans. & CC at 51-53 (¶¶ 170-85). The counterclaims arise from Mahoney's allegation that BSA failed to pay him in accordance with a transition agreement that the parties

entered into to share the fees earned from executive searches that were in progress at the time of his resignation.

Both parties have litigated aggressively. As an example, BSA's complaint includes detailed allegations that Mahoney "engaged in a defamatory campaign against BSA." Compl. ¶ 57; *see also id*. ¶¶ 58-65. However, BSA does not plead any claim for defamation. It justifies these allegations by asserting that it may "amend this pleading if it discovers that Mahoney's defamatory campaign has caused any of BSA's vendors, prospective employees, or clients to cease dealing with BSA or to reduce the extent of their dealings with BSA." *Id*. ¶ 66.

Not to be outdone, Mahoney accuses Lawrence Baum, BSA's principal, of "deliberately mishandling Bay Street's finances, possibly for his own benefit," including by (possibly) misapplying the proceeds of two "PPP" loans that BSA obtained during the Covid-19 pandemic. Ans. & CC at 18 (¶ 2); *see also id*. at 24-27 (¶¶ 30-45).[1] In a similar vein, Mahoney uses his pleading to accuse BSA of filing this action in "bad faith," for the improper purpose of harassment, in violation of Fed. R. Civ. P. 11 and 18 U.S.C. § 1836(b)(3)(D). *See* Ans. & CC at 16-17 (21st and 22nd Affirmative Defenses), 18 (¶ 1), 21 (¶ 13), 36 (¶ 92), 50 (¶ 161), 51 (¶ 166-69). Mahoney states that he has included these allegations because he "intends to take full discovery into the bad faith nature of Bay Street's pleading, including with respect to any involvement by Mr. Baum and his counsel in the decision to implement bad faith litigation, and the execution thereof." *Id*. at 51 (¶ 167.)

---

[1] Because these allegations are wholly irrelevant to Mahoney's counterclaims, BSA moved on February 7, 2025 to strike them, pursuant to Fed. R. Civ. P. 12(f), as "scandalous and impertinent." Dkts. 23, 24. In its moving brief, however, BSA takes pains to reiterate its own gratuitous allegations that Mahoney "has continued to engage in a campaign of unfair competition and defamation against BSA" (Dkt. 24 at 3), and advises that it may "amend the Complaint and state claims for tortious interference and defamation if it learns (as it likely will) that Mahoney's misconduct has led vendors, prospective employees, or clients to cease dealing with BSA." (*Id*.)

2

Discovery has been contentious as well, requiring frequent intervention by the Court. (*See* Dkts. 67, 82.)

## **Mahoney's Letter-Motion**

Mahoney's current motion arises out of his Third Request for Production of Documents, served on June 5, 2025, which demanded that BSA produce "All Documents and Communications from January 15, 2025 through the present between You and Your counsel concerning BSA's Threat made during the parties' settlement conferences on January 22 and 23, 2025." *See* Def. Mot. at 3; Caputo Decl. (Dkt. 84-1) Ex. 4, at 3. BSA objected on the grounds that it "did not make any threats" during those settlement conferences and that all of the documents and communications sought were privileged. Caputo Decl. Ex. 4, at 3. In his letter-motion, Mahoney argues that the documents sought are "pivotally relevant" to his potential "claims for sanctions" under Rule 11 and the DTSA, Def. Mot. at 4, and that they cannot be privileged, because communications made to facilitate extortion are subject to the crime-fraud exception. *Id*. at 1, 3-4. In the alternative, Mahoney asks that BSA be ordered to produce all responsive documents for *in camera* review. *Id*. at 1, 3-4.

In its opposition letter, filed on August 22, 2025 (Pl. Opp.) (Dkt. 89), BSA again denies that any improper threats were made and argues that any attorney-client communications concerning the January 22 and 23 settlement conference calls are privileged. Pl. Opp. at 1-3. BSA adds that the documents Mahoney seeks are irrelevant to any motion for sanctions, because the gravamen of Mahoney's potential motion – based on the "safe harbor" letter that he emailed to plaintiff's counsel on January 15, 2025 – "is essentially just that he denies BSA's allegations." *Id*. at 2; *see also* Caputo Decl. Ex. 1 (Safe Harbor Letter). BSA asks the Court to deny the motion to compel, award BSA its fees incurred in responding to it, and "admonish" Mahoney's counsel for making the motion. Pl. Opp. at 3.

3

In his reply letter, filed on August 26, 2025 (Def. Reply) (Dkt. 91), Mahoney argues that since BSA did not submit any "sworn statement" to refute the declarations of defendant's counsel as to the statements made during the January conference calls, it cannot rebut Mahoney's showing that an *in camera* review of documents at issue "may reveal evidence to establish . . . that the crime-fraud exception applies." Def. Reply at 1 (quoting dicta in *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 427 n.4 (S.D.N.Y. 2013)). Additionally, Mahoney contends that the discovery sought is relevant to his "Rule 11 letter" and to his counterclaims, because both of those documents "lay out why BSA's lawsuit constitutes bad faith" under Rule 11 and the DTSA. *Id*. at 3-4. Finally, Mahoney asserts, even if his motion is denied, no fees should be awarded, because it was "substantially justified." *Id*. at 4.

Because all three letters (as well as the Caputo declaration and other attachments to Mahoney's moving letter) discuss the parties' settlement negotiations in detail, they were filed under seal. *See* Dkts. 92-94.

## Discussion

No conference is required. The documents sought are not "relevant to any party's claim or defense" in this action, Fed. R. Civ. P. 26(b)(1), and consequently are outside of the "scope of discovery" authorized by the Federal Rules of Civil Procedure. *Id*. The Court need not reach the privilege issue.

Although Mahoney uses his pleading to accuse BSA of initiating this action in bad faith, based on false and misleading factual allegations, he has not asserted any counterclaim for "bad faith litigation." Nor could he. As he concedes, "New York law does not provide a standalone claim for bad faith litigation." Ans. & CC at 21 (¶ 13). The same is true under federal law. Rule 11 permits a party to file a motion for sanctions, based on certain species of bad-faith litigation conduct, but it is "well-settled" that "'Rule 11 does not create an independent cause of action.'"

4

*Hooks v. City of New York*, 2022 WL 16964196, at *1 (S.D.N.Y. June 28, 2022) (quoting *Benistar Admin Servs., LLC v. Wallach*, 2021 WL 1186352, at *5 (E.D.N.Y. Mar. 30, 2021)); *see also Sosland Pub. Co. v. Mulholland*, 1988 WL 87335, at *1 (S.D.N.Y. Aug. 17, 1988) ("Rule 11 is not a permissible basis for a claim for relief, whether raised in the complaint or in the answer as a counterclaim."). For the same reasons, "it is improper to plead a violation of Rule 11 as part of an affirmative defense." *Pelgrift v. CitiMortgage, Inc.*, 2025 WL 1604094, at *2 (D. Conn. June 6, 2025); *accord EEOC v. Grace Episcopal Church of Whitestone, Inc.*, 2008 WL 11417790, at *2 (E.D.N.Y. Nov. 13, 2008) (striking defendant's "assertion of a Rule 11 violation as an affirmative defense").

Likewise, while the DTSA permits a prevailing defendant to file a motion for a fee award, if a claim of misappropriation was made "in bad faith," *see* 18 U.S.C. § 1836(b)(3)(D), "the vast majority of courts to have considered the question" have held that § 1836(b)(3)(D) "provides defendants with a potential remedy, not a stand-alone cause of action." *Jane St. Grp., LLC v. Millennium Mgmt. LLC*, 2024 WL 3460987, at *2 (S.D.N.Y. July 18, 2024) (dismissing counterclaims for attorneys' fees under § 1836(b)(3)(D)); *see also Allstate Life Ins. Co. v. Mota*, 2021 WL 5166819, at *6 (S.D.N.Y. Nov. 5, 2021) (§ 1836(b)(3)(D) "does not provide a separate, independent cause of action for a claim under the Defend Trade Secrets Act brought in bad faith.").[2] Thus, the discovery that Mahoney seeks is not relevant to any cognizable claim or defense that he has pleaded or could plead.

Nor, for that matter, is it relevant to any pending motion. Although Mahoney has sent BSA a safe-harbor letter pursuant to Rule 11(c)(2), *see* Caputo Decl. Ex. 1, he has not filed any motion

---

[2] *Accord DFW Dance Floors, LLC v. Suchil*, 2025 WL 2076641, at *11-12 (N.D. Tex. July 22, 2025) (collecting cases); *New Jersey Deer Control, LLC v. En Garde Deer Def., LLC*, 2025 WL 216318, at *3 (D.N.J. Jan. 16, 2025) (collecting cases); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2024 WL 4627049, at *2 (N.D. Cal. Oct. 8, 2024) (collecting cases).

for sanctions. This may be because his safe-harbor letter challenges the Complaint itself, principally on the ground that its factual allegations are false or misleading. *See* Safe Harbor Letter at 1.[3] The same is true of his pleading. *See* Ans. & CC at 18 (¶ 1), 29-30 (¶ 58), 33 (¶¶ 76, 79), 36 ¶ (92), 42 (¶ 125). In such a case, "the sanctions issue under Rule 11 normally will be determined at the end of the litigation." Fed. R. Civ. P. 11 Advisory Comm. Note to 1983 Amend. Thus, even if Maloney were to promptly file a formal Rule 11 motion, it would likely be denied (or stayed) as premature. *See*, *e.g.*, *Luv N' Care, Ltd. v. Shiboleth LLP*, 2017 WL 3671039, at *13 (S.D.N.Y. Aug. 8, 2017) (Nathan, J.) ("[T]he prevailing approach of courts faced with this situation, where a defendant files a sanctions motion at the outset of a case on the ground that the plaintiff's allegations are false, is to deny the motion without prejudice to renewal after discovery."); *Baskin v. Lagone*, 1993 WL 59781, at *6 (S.D.N.Y. Mar. 3, 1993) (denying early Rule 11 motion because it was "premature to ascertain, that the Plaintiffs' Amended Complaint is not grounded in fact or warranted by existing law, as Rule 11 requires before sanctions can be imposed").

The same is true under the DTSA. Courts in this District (and elsewhere) routinely hold that a § 1836(b)(3)(D) motion, which can only be made by a "prevailing" party, must await the end of the case. *See Jane St. Grp.*, 2024 WL 3460987, at *3 (a fee award under the DTSA "is a discretionary remedy available after the resolution of an underlying misappropriation claim"); *Pinebrook Holdings, LLC v. Narup*, 2020 WL 871578, at *9 (E.D. Mo. Feb. 21, 2020) ("The language of the subsection itself demonstrates attorney's fees may only be awarded to 'the prevailing party' – i.e., after a party *prevails* on a determination on the merits.").

---

[3] Unsurprisingly, that letter, dated January 15, 2025, says nothing about the "extortionate threats" by plaintiff's counsel, which were allegedly made a week later. The safe-harbor letter does suggest that plaintiff's counsel "fail[ed] to conduct an adequate pre-complaint investigation." Safe Harbor Letter at 2. But it does not otherwise accuse counsel of any misconduct.

Finally, even if there were a sanctions motion pending, the discovery that defendant now seeks would likely be unobtainable. "[T]he drafters of the prior and current versions of Rule 11 wished to avoid the creation of time-consuming satellite litigation." *Pelgrift*, 2025 WL 1604094, at *2. As the Advisory Committee explained in 1983:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

Fed. R. Civ. P. 11 Adv. Comm. Note to 1983 Amend. Taking this caution to heart, district courts in this District – and elsewhere – routinely deny requests for discovery in connection with Rule 11 motions. *See*, *e.g.*, *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2021 WL 2481835, at *8 (S.D.N.Y. June 17, 2021) ("[T]o the extent Defendants seek to take these depositions in aid of a future Rule 11 motion, that request is denied[.]"); *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2011 WL 940263, at *5 (N.D. Cal. Feb. 18, 2011) (denying discovery); *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, 2009 WL 536917, at *2 (D. Me. Feb. 25, 2009) (same); *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,* 644 F. Supp. 589, 592 (E.D. Mich. 1986) (same). There is no reason, on the present record, to believe that a different result would be appropriate here.

## Conclusion

As shown above, the discovery that defendant now seeks (i) is not relevant to any cognizable claim, defense, or counterclaim pleaded by either party; (ii) is not relevant to any pending sanctions motion, as no such motion has been filed; and (iii) would require "leave of the court," made on a showing of "extraordinary circumstances," even if it were relevant to a pending sanctions motion. Fed. R. Civ. P. 11 Adv. Comm. Note to 1983 Amend. Defendant's letter-motion is therefore DENIED.

Plaintiff's request for a fee award and related relief is also DENIED. As noted above, the drafters of Rule 11 were – rightly – concerned that its benefits not be "offset by the cost of satellite litigation over the imposition of sanctions." Fed. R. Civ. P. 11 Adv. Comm. Note to 1983 Amend. Given that both parties to this action have already displayed a tendency to over-litigate what is, at heart, a relatively simple case, this Court is reluctant to issue an order that could encourage future overlitigation. Put another way, the Court does not believe that "fighting fire with fire" has been helpful to either side. Consequently, the Court declines to fan the flames.

The Clerk of Court is respectfully directed to close the motion at Dkt. 84.

Dated: New York, New York         **SO ORDERED.**
       September 2, 2025

_____
**BARBARA MOSES**
**United States Magistrate Judge**