USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 8/13/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAY STREET ADVISORS, LLC,

Plaintiff,

-against-

KEVIN P. MAHONEY,

Defendant.

24-CV-9139 (RA) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court are two discovery letter-motions, both filed by plaintiff Bay Street Advisors, LLC (BSA) pursuant to Local Civil Rule 37.2. BSA's first letter-motion, dated July 13, 2026, complains that non-party Christoph Zeiss Partners, Inc. (CZP) has failed to produce client agreements responsive to Request No. 4 of BSA's "Subpoena #2," dated February 13, 2026. *See* BSA Client Ag. Mot. (Dkts. 139, 140) at 1.[1] On July 14, 2026, CZP filed a responding letter (CZP Resp.) (Dkt. 141), and, on July 16, 2026, BSA filed a reply letter (BSA Client Ag. Reply) (Dkts. 144, 145) (incorrectly posted on ECF as a "letter-motion").

BSA's second letter-motion, filed on July 21, 2026, asks the Court to compel defendant Kevin P. Mahoney to turn over for examination a previously-created forensic image of his Lenovo ThinkPad. *See* BSA Forensic Image Mot. (Dkts. 151, 152, 167) at 1-2. In connection with this motion, BSA submitted a number of exhibits, including the declaration of Amanda Laguardia (Laguardia Decl.) (Dkt. 154), a manager at TransPerfect, a forensic imaging and analysis company, who attaches a proposed Forensic Analysis Protocol. *See id.* Ex. A (Protocol) (Dkt. 154-1). On July 24, 2026, Mahoney submitted his response (Mahoney Resp.) (Dkts. 157, 158, 169), and, on July 28, 2026, BSA submitted its reply letter (BSA Forensic Image Reply) (Dkts. 160, 161, 167).

[1] The unredacted version of many of the parties' submissions were filed under seal to protect information they believe to be commercially sensitive.

No conference is necessary. Based on the parties' letters and attached exhibits, and for the reasons that follow, BSA's motions will be granted.

**Background**

BSA is an executive search firm. In its Complaint (Compl.) (Dkt. 1), filed on November 27, 2024, BSA claims that Mahoney – its former employee – breached his employment agreement, violated his fiduciary duties, and misappropriated BSA's trade secrets, in violation of the Defend Trade Secrets Act (DTSA), by "exfiltrating the contents of his BSA-issued laptop" and then leaving BSA for a direct competitor, CZP; soliciting other BSA employees to join him at CZP; and soliciting at least one BSA client to engage CZP while contractually prohibited from doing so. *See* Compl. ¶¶ 67-90. Discovery has been contentious, requiring frequent intervention by the Court.

**Client Agreements**

On June 1, 2026, this Court ordered CZP to respond to Request No. 4 contained in BSA Subpoena #2, by either:

> (a) producing '[d]ocuments sufficient to show [] CZP's agreements with, work performed for, and revenue received from . . . (i) Ardonagh Group; (ii) Blue Owl Capital; (iii) BNP; (iv) KKR; (v) MSIM; (vi) Blackstone; (vii) Standard Charted Bank; (viii) BTIG; (ix) Carlyle; (x) Apollo; (xi) Incline; (xii) Stone Point Capital,' (Dkt. 113 at 2), and/or (b) serving written objections in accordance with Fed. R. Civ. P. 45(d)(2)(B).

6/1/26 Order (Dkt. 131) ¶ 2. On June 8, 2026, CZP objected to Request No. 4, primarily arguing that the request was "overbroad." BSA Client Ag. Mot. at 2 (text of CZP objection); *id*. Ex. A (copy of CZP objection). On July 13, 2026, after additional back-and-forth between counsel (during which they agreed, among other things, to limit the temporal scope of the request to the calendar years 2024 and 2025), CZP produced the "agreements for the four companies from which CZP received revenue *attributable to Mr. Mahoney*." CZP Resp. at 2 (emphasis added). CZP does

not deny that it entered into executive search agreements with some or all of the remaining eight clients listed in Request No. 4 during the relevant period, and suggests that Mahoney himself may have signed those agreements. *See* CZP Resp. at 3. Nonetheless, it has refused to produce them, arguing that "even if Mr. Mahoney signed a search agreement relating to one of the remaining eight clients, that fact would not establish that he originated the client relationship or generated the underlying business." *Id*.

True enough. But BSA is not required to accept CZP's word that Mahoney did *not* "originate" or "generate" its business from the other eight clients – which, in BSA's view, would have violated his obligations to BSA, because he worked with the same clients when he was a BSA employee. As BSA points out, emails previously produced in discovery show, at a minimum, that Mahoney was in communication with some of those eight clients soon after joining CZP. *See* BSA Client Ag. Reply Exs. A, B, C (Dkt. 145-1, 145-2, 145-3). The agreements themselves thus come within the "extremely broad" scope of discovery permitted pursuant to Fed. R. Civ. P. 26(b)(1), *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *6 (S.D.N.Y. Aug. 31, 2016) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)), as they may assist BSA in determining whether and to what degree Mahoney was involved in landing their business for CZP. Moreover, there is a fairly small universe of documents at issue in this request, and CZP has provided no support for its suggestion, *see* CZP Resp. at 3, that the production of up to eight clients' agreements would be "unduly burdensome."

Therefore, BSA's motion to compel production of the client agreements is GRANTED. No later than **August 24, 2026**, CZP must produce all of its agreements with the clients listed in Request No. 4 that were executed or became effective from January 1, 2024 through December 31, 2025.

**Forensic Image**

On June 6, 2025, BSA asked Mahoney to produce forensic images of three devices, including the Lenovo ThinkPad that he used while at BSA and continues to use at CZP. *See* BSA Forensic Image Mot. at 1 n.1. Mahoney objected on the ground that the request was "overly broad and unduly burdensome," particularly given that he had already "forensically collect[ed]" all data on the devices and produced all responsive documents and information in accordance with search terms provided by BSA. *Id*. Ex. A, at 6-7. One year later, on June 5, 2026, BSA revived its demand, in part, and now seeks to compel Mahoney to produce an image of the Lenovo ThinkPad for what it calls a "cabined forensic examination," BSA Forensic Image Reply at 3, by TransPerfect, a third-party vendor, which will produce reports to both parties concerning the contents and use of the machine, but will not place the image itself, or a full export of its contents, in the hands of BSA. *See* Protocol at ECF pp. 3-4.[2] Specifically, pursuant to the proposed Protocol, TransPerfect will: produce a spreadsheet containing the *names* of the folders and files on the machine; conduct a "USB Device Analysis" to show if "secondary data storage devices" were connected to it; analyze file transfer activity to show if any relevant information was disseminated to third parties; and conduct a "Deleted File Analysis," an "Internet and Cloud History Analysis," a "Virtual Machine Analysis," and a "Secondary Device Backup Analysis." *Id*.

Mahoney again objects, arguing that the discovery sought will be intrusive, because the forensic image to be examined contains numerous irrelevant, privileged, and/or private documents;

[2] In a paragraph labeled "Device Images to be Analyzed," the Protocol identifies the Lenovo ThinkPad – by name and by serial number – as the subject of the proposed examination. *See* Protocol at ECF p. 2. In the next paragraph, labeled "Scope," the Protocol states that it will govern the forensic examination of "two personal devices belonging to Mahoney." *Id*. However, no second device is ever identified. Moreover, BSA's opening and reply letters refer only to the Lenovo ThinkPad. The Court therefore construes BSA's motion as seeking an examination of one device: the Lenovo ThinkPad.

that forensic examination of an opponent's computer is a "drastic" measure generally reserved only where there is evidence of spoliation or other discovery misconduct; and that BSA has alternative means of obtaining the information it says it seeks from the Lenovo ThinkPad. Mahoney Resp. at 1-3. None of these arguments is persuasive.

As plaintiff points out, Mahoney's *use* of the Lenovo ThinkPad – specifically, whether and when he deleted, copied, backed up, or transferred BSA documents and information stored on that machine – is relevant to BSA's central claims. *See* BSA Forensic Image Mot. at 2; BSA Forensic Image Reply at 2-3. For example, as part of its DTSA claim, BSA alleges that Mahoney misappropriated its proprietary information by, in part, "transferr[ing] it to his personal external hard drive(s)" in his "final days of his employment," and ultimately "delet[ing]" that information, which "deprived BSA of that material altogether." Compl. ¶¶ 34, 68-69. As part of its breach of contract and breach of fiduciary duty claims, BSA similarly asserts (albeit in more general language) that Mahoney "fail[ed] to turn over and return all of BSA's confidential information" and "disseminat[ed] or disclos[ed]" that information. *Id.* ¶¶ 77, 82, 87(b). Moreover, Mahoney has testified that he regularly used the Lenovo ThinkPad for "personal and work" matters prior to his departure from BSA, *see* BSA Forensic Image Mot. Ex. C (Dkt. 152-3) at 73:6-14, and continued to use it as his "primary device" when he began work at CZP. *Id.* at 253:18-24. The forensic examination that BSA proposes thus appears to be well-tailored to yield relevant electronic evidence, at least some of which cannot be obtained from other sources.

In trade secret cases like this one, where the *use* of the defendant's electronic device is as important as its contents, the courts generally do not consider a forensic examination of the device a "drastic" or disfavored discovery measure. *See, e.g.*, *Saniteq, LLC v. GE Infrastructure Sensing, Inc.*, 2018 WL 4522107, at *8 (E.D.N.Y. July 12, 2018) (reviewing "forensic expert report"

regarding defendant's laptop and finding it relevant to plaintiff's misappropriation claim because it indicated that certain files were not "accessed" beyond a certain date), *adopted*, 2018 WL 4357475 (E.D.N.Y. Sept. 13, 2018); *Vaughan Co. v. Glob. Bio-Fuels Tech., LLC*, 2016 WL 6605070, at *2-5 (N.D.N.Y. May 20, 2016) (granting motion to compel forensic examination of a "mirrored image" of the hard drive from defendant's laptop to investigate whether defendant transferred Vaughan files onto the laptop and then deleted them).[3] There is thus no requirement that BSA make a showing of spoliation or other discovery misconduct before seeking discovery of the ThinkPad itself.

Mahoney is correct that allowing BSA unfettered access to his laptop would be overly intrusive. However, BSA does not seek unfettered access. To the contrary: the proposed Protocol (which Mahoney does not discuss in his opposition letter, except to note that it was not previously provided and is ambiguous as to how many devices will be examined, *see* Mahoney Resp. at 4 n.5) is designed to prevent the unnecessary disclosure of documents that are irrelevant, privileged, or otherwise outside the scope of appropriate discovery. Indeed, under the Protocol, TransPerfect will not disclose any of the documents or files on the ThinkPad to BSA. Instead, it will provide a list of file and folder *names* to both parties, and will examine the computer's "forensic artifacts" to determine, if possible, whether and when it was connected to secondary data storage devices or used to disseminate files to third parties, delete files, or perform other potentially relevant operations. *See* Protocol at ECF pp. 2-3. Mahoney does not take issue with the formulation of any

[3] In some misappropriation cases, the forensic examination occurs before the litigation is brought, and furnishes significant support for the plaintiff's claims. *See, e.g.*, *ExpertConnect, L.L.C. v. Fowler*, 2019 WL 3004161, at *2, 6 (S.D.N.Y. July 10, 2019) (finding plaintiff's DTSA claim against two former employees plausible, in part because a pre-litigation forensic examination of defendants' laptop substantiated plaintiff's allegations that that one defendant downloaded a confidential document unrelated to her work duties and the second defendant "attempted to wipe her ExpertConnect laptop clean to conceal the fact that she took files").

of these components of the proposed investigation. Further, as BSA points out, the discovery it seeks will impose no significant burden on Mahoney, because the Lenovo ThinkPad has already been imaged by his own discovery vendor, *see* BSA Forensic Image Reply Ex. A (Dkt. 161-1) at 245:19-246:25, and BSA will pay the expenses associated with the forensic examination. *See* BSA Forensic Image Reply at 1. Therefore, BSA's motion to compel production of the existing forensic image of Mahoney's Lenovo ThinkPad, for the limited purposes set forth in the proposed Protocol, is GRANTED. No later than **August 24, 2026**, Mahoney must turn over the forensic image to TransPerfect.

## Conclusion

For the reasons and to the extent set forth above, both of BSA's discovery letter-motions are GRANTED. The Clerk of Court is respectfully directed to close the motions at Dkts. 139, 140, 144, 145, 151, 152, and 167. The parties are reminded that, pursuant to Moses Ind. Prac. § 1(d), the Court requires a paper courtesy copy of any letter or letter-motion that includes more than one attachment or exhibit.

Dated: New York, New York
August 13, 2026

**SO ORDERED.**



**BARBARA MOSES**
**United States Magistrate Judge**