# KASOWITZ LLP

1633 BROADWAY
NEW YORK, NEW YORK 10019
(212) 506-1700
FAX: (212) 506-1800

ANTHONY MACDONALD CAPUTO
DIRECT DIAL: (212) 506-3302
DIRECT FAX: (212) 500-3572
ACAPUTO@KASOWITZ.COM

ATLANTA
BOULDER
HOUSTON
LOS ANGELES
MIAMI
NEWARK
SAN FRANCISCO
WASHINGTON DC

November 25, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

*Re:* *Bay Street Advisors, LLC v. Kevin P. Mahoney*, Case No. 24-cv-09139 (RA) (BCM)

Dear Judge Moses:

Pursuant to Local Civil Rule 37.2 and Rule 2.B of Your Honor's Individual Practices in Civil Cases, Defendant and Counterclaim-Plaintiff Kevin P. Mahoney ("Mahoney") respectfully submits this opposition to Plaintiff and Counterclaim Defendant Bay Street Advisors, LLC's ("BSA") November 17, 2026 letter motion (the "Motion" or "Mot.") (Dkts. 204, 208). BSA's request is premature, misstates the record, and is legally unfounded. Beyond speculation, BSA fails to explain why its expert ("BSA's Transperfect Team") is entitled to the sort of "unfettered access" the Court previously rejected as "overly intrusive," (Dkt. 170), as opposed to the neutral examiner (the "Neutral Team"), to whom Mahoney has already agreed to disclose the new forensic image, subject to a protocol the Court has already approved. BSA Ex. A at 12-13. Accordingly, and as detailed below, the Motion should be denied.

## I. <u>Factual Background</u>

On July 21, 2026, BSA moved to compel the production of the April 22, 2025 Lenovo image, to be reviewed in a "neutral and impartial manner" by a "neutral investigator" at TransPerfect. Dkts. 151, 160. This Court ordered Mahoney to produce the "existing forensic image of Mahoney's Lenovo ThinkPad"[1] pursuant to BSA's proposed protocol (Dkt. 170).

---

[1] Contrary to BSA's false assertion that "Mahoney failed to preserve a complete forensic image when his preservation obligations attached," (Mot. at 2), an image was created of the Lenovo on or around April 22, 2025 (the "Targeted Logical Image"). *Id.* Although BSA insinuates that Mahoney's collection efforts were insufficient, BSA

Beginning on September 1, 2026, counsel for BSA sought confirmation that Mahoney had "produced all responsive, non-privileged documents and communications in his possession, custody, or control responsive" to BSA's RFP Nos. 22 and 23 (BSA Ex. A at 20), and "searched all relevant locations, devices, [and] repositories" with respect to those RFPs. *Id.* at 18-19. Counsel for Mahoney confirmed that all the repositories of which it is aware were searched, requesting that BSA identify a specific repository of concern. *Id.* at 17-18.

BSA responded with accusations, claiming that spoliation of "many potentially relevant work product folders" had occurred, that "the [Lenovo] was connected to another external source" before it was imaged, and that due to Mahoney's purported "discovery issues,"[2] he should "revisit and identify any additional repositories" (*Id.* at 17). Three days later, on September 23, 2026, BSA informally demanded "all communications among Mahoney, Kasowitz, and/or vDiscovery concerning the collection and imaging of the Lenovo laptop," and claimed to have "uncovered evidence" that "Mahoney interacted with Windows backup and recovery functions" before his Lenovo was collected and imaged (*Id.* at 15-16).

In an effort to cooperate with BSA while managing a separate federal bench trial,[3] counsel for Mahoney responded on September 28, 2026, reiterating that it was not aware of any other repositories, that VDiscovery was analyzing the Transperfect report underlying BSA's accusations, and that Mahoney did not object to a full forensic image of the Lenovo (the "Physical Image"), or its transmission "to Transperfect . . . **subject to the same protocol and the Court's order**." *Id.* at 12-13 (emphasis added).

Unsatisfied, BSA demanded that both images be transferred directly to BSA's Transperfect Team – not the Neutral Team. *Id.* at 11-12. BSA also again claimed to have "identified at least two additional" repositories, based on a "restore point backup," and a purported "USB device that was mounted on April 18, 2025." *Id.* Counsel for Mahoney

---

does not specify how, nor can it. *See, e.g., Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("[T]here are many ways to manage electronic data, [and] litigants are free to choose how this task is accomplished"); *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 2008 WL 11376620, at *3 n.4 (D. Conn. Nov. 5, 2008) ("There is no generally established way litigants are expected to preserve their electronic data").

[2] Yet again, BSA's narrative of purported discovery malfeasance based on the collection and processing issues Mahoney identified, immediately disclosed to all parties, and corrected before the end of fact discovery is baseless. Mot. at 4; *see* Dkts. 171, 172. Now, BSA contends that Mahoney's production contains "materials not produced as standalone documents with metadata establishing provenance." Mot. at 4. While it is unclear what this means (or how it relates to the relief sought here), the documents BSA cites to support this claim – *i.e.*, "Dkts, 180-14 –180-17" – were produced by Mahoney ***with full metadata intact***. *See* Ex. 1. BSA's suggestion otherwise is false. Further, BSA's vague speculation that Mahoney may rely "on that provenance to defend against BSA's DTSA claim" (whatever that means) has nothing to do with the relief sought, particularly given that BSA possesses all of the same metadata. *See Fed. Hous. Fin. Agency v. JP Morgan Chase & Co.*, 978 F. Supp. 2d 267, 277 (S.D.N.Y. 2013) ("[A] motion to compel cannot be granted on the basis of a future hypothetical"); *Chow v. SentosaCare, LLC*, 2020 WL 559704, at *3 (E.D.N.Y. Jan. 23, 2020) ("Plaintiffs cannot simply speculate about potential theories . . . and expect any Court to grant a motion to compel").

[3] Counsel for Mahoney was also trial counsel for plaintiff in the matter of *FinancialApps, LLC v. Envestnet, Inc. & Yodlee, Inc.*, Civ. No. 19-1337-JLH.

confirmed for a third time that it was unaware of additional repositories, and objected to the transfer of any forensic images other than to the Neutral Team, as it would go "well beyond the protocols approved by the Court." *Id.* at 9-10.

Following the creation of the Physical Image on October 2, 2026, the parties met and conferred on October 23, 2026 to discuss these issues. During this meet and confer,[4] Counsel for Mahoney explained to BSA that its speculative accusations concerning the purported (i) attachment of an external USB drive; and (ii) the purported external "backup" of Mr. Mahoney's computer were simply false, based on his expert's analysis of the full Physical Image:

- First, a review of Windows system data present in the full Physical Image confirmed that no external USB or other such device was ever attached to Mahoney's computer, and moreover, that the globally unique identifier ("GUID") BSA insisted constituted evidence of such an external storage device in fact referred to the internal "C: Drive" contained on Mahoney's computer. No less than five separate, independently dispositive Windows registry artifacts confirm this finding. *See* Gopaul Decl. ¶¶ 8-16.

- Second, the same review confirmed that BSA's assertion that Mahoney's creation of Windows "restore points" prior to collection indicated the creation of an undisclosed external "backup" was also misplaced. As Microsoft's own customer support literature confirms, a Windows "restore point" is not the same as a data backup. *Id.* ¶¶ 18-21. Rather, Windows Restore Points provide a mechanism to save system settings so that they can be rolled back or "restored" following the installation of new software or other processes that could impact those settings. *Id.* Restore Points do not affect stored personal files or data.[5] Moreover, counsel for Mahoney also informed counsel for BSA that there was no evidence that any of these restore points were either used or deleted, or that any backup drives were ever connected in connection with them.

- Third, Mahoney requested that BSA identify the files and folders it believed had been deleted, so that VDiscovery could conduct an analysis to test this claim as well. BSA provided the requested information on October 26, 2026, after which Mahoney's expert commenced its review.

Evidently committed to further motion practice, and concerned by the implosion of two of the three issues it had ginned up, BSA filed this Motion without checking on the status of

---

[4] Notably, BSA yet again resorts to its preferred tactic of sandbagging, by raising the presence of "LaCieTookit.exe" software for the first time in its briefing. Mot. at 3. For the avoidance of any doubt, BSA has never mentioned this software previously, and the parties have never met and conferred on this issue. Moreover, and in any event, there is no evidence that this software was ever used, or that any backups of any kind have ever been created.

[5] Despite that Counsel for Mahoney explained these findings at length during the parties' meet and confer, and again reiterated that Mahoney was willing to immediately turn over the full Physical Image immediately subject the protocol already approved by the Court, BSA disingenuously claims that "The Limited Image Data Evidences Mass File Deletion, Backup Activity" in its motion. Mot. at 3.

VDiscovery's inquiry into the allegedly missing documents, and without seeking a further meet and confer.

### II. <u>The Motion Is Both Premature and Baseless</u>

Besides BSA's purely tactical decision to ignore and omit the details of the Party's meet and confer, BSA also fails to explain why this Court should abandon the protocol it previously approved, by permitting BSA's Transperfect Team access to the images of Mahoney's computer.

Specifically, BSA offers a wall of jargon to describe the analysis it claims its expert must perform, concluding that a "comparison of the Targeted Logical Image and Physical Image" will be required. Mot. at 4. BSA fails, however, to explain how or why any of this analysis, or the comparison it claims is necessary, cannot be performed by the Neutral Team.

Instead, BSA provides pure conjecture, none of which explains how or why its expert, and not the Neutral Team, must perform the analysis – even assuming that BSA's facially speculative concerns actually obtain. For example, BSA claims that the foregoing "analysis is iterative and context-dependent," and further, that "the significance of an artifact or discrepancy **may depend** on surrounding forensic evidence and case-specific facts, and one finding **may identify** additional artifacts or lines of inquiry requiring further examination." *Id.* Besides that BSA's purported reasoning is facially speculative, neither BSA nor its expert explains why its neutral team would be incapable of conducting such "further examination."

Similarly, BSA claims that "[a] neutral review team operating under a fixed protocol **may not** be positioned to investigate such discrepancies or pursue additional supporting or exculpatory evidence revealed during the analysis." *Id.* at 5. Again, BSA's speculation is unaccompanied by any explanation or principled reason setting forth why its Neutral Team would be incapable of performing the relevant analysis. Nor does BSA explain why the relief it seeks is ripe now, given the inherently conjectural nature of its as-yet unrealized concerns.

Notably, BSA seeks relief substantially similar to what the Court denied in *Calyon v. Mizuho Sec. USA Inc.*, 2007 WL 1468889 (S.D.N.Y. May 18, 2007). There, plaintiff's expert requested full access to certain hard drive images to "effectively investigate" them, claiming, as LaGuardia does here, that "an independent third-party expert would [not] possess the requisite incentive to search exhaustively for evidence." *Id.* at *1. The Court denied such "***carte blanche*** access," noting that Plaintiff had failed to establish that a third-party examiner was incapable of "thoroughly search[ing] the hard drive images." *Id.* at *5.[6]

For the foregoing reasons, Mahoney respectfully requests the Court deny the Motion.

---

6 *See also See Chevron Corp. v. Donziger*, 425 F. Supp. 3d 297, 302-03 (S.D.N.Y. 2019) (granting examination of electronic media, but modifying protocol "substantially in order to limit to a bare minimum the extent to which [party] or ***even its forensic expert (as distinguished from the neutral)*** would be exposed to materials on [party's] media that are not responsive") (emphasis added).

Sincerely,

*/s/ A. Macdonald Caputo, Jr.*

A. Macdonald Caputo, Jr.

AMC